IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
et al.,

    Plaintiffs,

v.                                              Case No. 15-CV-324

MARK L. THOMSEN, et al.,

    Defendants.

---

JUSTIN LUFT, et al.,

    Plaintiffs,

v.                                              Case No. 20-CV-768

TONY EVERS, et al.,

    Defendants.

---

**SUPPLEMENTAL DECLARATION OF KRISTINA BOARDMAN
IN SUPPORT OF DEFENDANTS' OPENING BRIEF
ON REMAND FROM THE SEVENTH CIRCUIT COURT
OF APPEALS REGARDING ID PETITION PROCESS**

---

I, KRISTINA BOARDMAN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Administrator of the Wisconsin Department of Transportation, Division of Motor Vehicles (DMV). I make this declaration in

response to the *Luft* Plaintiffs' Motion for a Preliminary Injunction and the *One Wisconsin* Plaintiffs' Motion for Preliminary Injunction.

2. I fully incorporate my prior declarations submitted in these cases and, namely, my declaration dated September 10, 2020 (One WI Dkt. 404; Luft Dkt. 406)

3. The *One Wisconsin* plaintiffs have requested that the Court order the following:

> Require DMV to contact by phone or email each IDPP petitioner holding a Temporary Receipt issued between April 20 and May 7 and August 17 and September 3 to: (1) advise them that their card will expire prior to the November 3 election; (2) advise that they are eligible for an early renewal of their Temporary Receipt; and (3) ask whether they want their Temporary Receipt (a) mailed to the address that the DMV has on file, (b) mailed to an address they provide, (c) emailed to them, or (d) made available to them for in-person pickup at the local DMV. The deadline for completing this process should be October 16.

(One WI Dkt. 403:75.) This request is unworkable for several reasons.

4. First, this request is unnecessary. Petitioners do not need to respond to DMV that they want to "renew" their receipt. The normal process is to mail out a new receipt for an additional 60-day time period ten days prior to the expiration of the current receipt. If there are concerns about the postal service, DMV is able to mail out renewal 60-day receipts to all petitioners that are currently in a "pending" or "suspend" status *sooner* than ten days before expiration. But I am not currently aware of any issue with the 10-day lead time

2

we currently allow for mailing of these renewal receipts. These receipts are always mailed to the petitioner at the last known address on file.

5. Second, DMV does not have a telephone number or email address for all petitioners. While the information is requested on the application, not all applicants provide this information.

6. Third, some petitioners holding a temporary receipt may have since been issued a hard card, canceled, or denied. So counting each "petitioner holding a Temporary Receipt issued between April 20 and May 7 and August 17 and September 3" would not be appropriate, since some would no longer be entitled to the receipt.

7. Fourth, emailing the receipt or having it available for pick-up at the DMV is not compliant with state law, and emailing would not provide the security of having the receipts printed on security paper. The security paper reduces the risk of tampering and fraud with temporary receipts.

8. The *One Wisconsin* plaintiffs have also requested that the Court order the following:

> Any petitioner who DMV is unable to contact by phone or email prior to October 16 will, on October 19, be overnight-mailed a letter explaining (1) their ID will expire prior to the election; and (2) they are eligible to renew their ID by mail, telephone, email, or in person. Any petitioner who contacts the DMV to receive a renewed ID by mail will promptly be sent a renewed Temporary Receipt by overnight mail.

(One WI Dkt. 403:75.) Parts of this request are unworkable for the same reasons noted above. This request is also unnecessary if DMV proactively mails out renewal 60-day receipts to all petitioners that are currently in a "pending" or "suspend" status *sooner* than ten days before expiration. This alternative approach is both timelier, more cost effective, and something DMV could do if there was concern about the 10-day lead time it currently gives to mail renewal 60-day receipts.

9. The *One Wisconsin* plaintiffs have also requested that the Court order the following:

> Any Temporary Receipt issued between October 1 and November 1 must be (1) mailed by overnight mail no later than 24 hours after a petition is received by the DMV, or (2) issued directly to the petitioner at the local DMV the day the petition is made.

(One WI Dkt. 403:75.) This request is unnecessary and a waste of resources because the majority of IDPP applications are approved for an 8-year state ID card within five days of application. It does not make sense to produce a receipt within 24 hours and send it via overnight mail when the great majority will receive an 8-year state ID card less than a week later—all in advance of the election. Per DMV's normal timeline, we produce IDPP receipts within 24 hours and overnight mail these beginning the Monday of the week prior to an election week. For the upcoming election, this means that we will begin this overnight mailing process on Monday, October 26, and it will continue through

4

November 5. I am not currently aware of any issue with the postal service's mail process, and DMV uses UPS for its overnight delivery service. However, if it were found to be necessary, DMV could overnight mail IDPP receipts beginning October 19.

10. The *One Wisconsin* plaintiffs have requested that the Court order the following:

> Defendants must create an affidavit for voters who either (1) have received but have lost or (2) have applied for but not yet received a Temporary Receipt. This affidavit must be made available on Election Day to voters who claim to meet one of these criteria, and they must be allowed to cast a provisional ballot. A provisional ballot cast under this provision will be counted unless the DMV reports that the affiant is not in the IDPP and has not been issued a Temporary Receipt.

(One WI Dkt. 403:76.) DMV does not have the available resources during election week to coordinate with 1,850 municipal clerks to verify the identification status of everyone casting a provisional ballot under this proposed affidavit. Also, this request is unnecessary because DMV provides information regarding the provisional ballot process to all IDPP applicants with a provisional ballot handout beginning the Friday before an election. If petitioners have lost or not received their IDPP receipts by election day, they can request a replacement receipt by phone, email, or in person at the DMV. Replacements are sent out the same day they are requested, and if it is between October 26 to November 5, the receipt would be sent via overnight mail.

11. The *One Wisconsin* plaintiffs have requested that the Court order the following:

> By October 16, DMV must complete an inventory of each IDPP petitioner in "pending" status and produce a report explaining why each has not yet satisfied DMV that his or her name, date of birth, and U.S. citizenship are "more likely than not" correct, taking into account the "rebuttable presumption of eligibility," together with the additional evidence DMV believes is necessary to satisfy the "more likely than not"/"presumption of eligibility" standard.

(One WI Dkt. 403:76.) This is not necessary because all petitioners with pending applications currently have an IDPP receipt that is valid for voting, and they will continue to receive these receipts through the election. As of August 31, 2020, there are 358 pending applications. 291 of these pending applications are incomplete, meaning the petitioner has yet to provide residency and/or identity documentation. 28 applications are awaiting verification from DHS. 39 applications have not been verified by DHS Vital Records, meaning there was no match on the information provided, or DHS Vital Records failed to respond within a 30-day time period. If ordered by the Court, DMV could provide a summary of what information is still needed to issue an 8-year state ID card for the applications referred to CAFU for adjudication.

12. The *Luft* plaintiffs have requested that DMV:

> Issue a voter ID card that is valid for 8 years ("Hard Card") to any voter who has (i) had their name, date of birth, and social security number verified through the Social Security Online Verification System

6

("SSOLV"); (ii) submitted proof of Wisconsin residency; and (iii) sworn under penalty of perjury that they are a U.S. citizen.

(Luft Dkt. 399:2.) This request is unreasonable and would violate state law regarding the requirements for issuance of a state ID card. SSOLV is not proof of U.S. citizenship; non-citizens authorized to work in the U.S. are eligible for a social security number. Since April 1, 2007, anyone applying for a state ID or driver's license needs to have proof of legal presence. For persons applying for a free ID for voting via the IDPP, Wisconsin DMV can verify this information without requiring a petitioner to purchase documentation. Petitioners can swear under penalty of perjury that they are a U.S. citizen and a receipt valid for voting will be provided through the IDPP. But an 8-year state ID card requires some sort of evidence of one's birth in the U.S. or citizenship.

13. The *Luft* plaintiffs also have requested that DMV:

Issue a Hard Card by the time the initial Temporary Receipt expires to any voter who has complied with reasonable requests for information, unless the DMV has a genuine reason to suspect that the voter is ineligible. The absence of documentation does not itself constitute such a reason.

(Luft Dkt. 399:2.) This request is unreasonable and would violate state law regarding the requirements for issuance of a state ID. Such an order is also vague in that it fails to define "reasonable" (i.e., would the application, itself, be considered "reasonable," so that merely completing this form would entitle someone to an 8-year state ID card after 60 days?). It would be unclear under

7

this proposal what would happen if an applicant applies, DHS cannot verify, the applicant responds on day 59 with a different name or state of birth, and that new information cannot be verified. In that scenario, the 60-day mark is reached, but under state law a hard card should not be issued without verification from DHS or extraordinary proof.

14. The *Luft* plaintiffs have requested that DMV:

> Permit voters to use affidavits—akin to the common law name change affidavit—to resolve other issues in a voter's background documents (e.g., birth date discrepancies, mismatches between current name and name in voter's SSA record, and missing information regarding birth details) unless the DMV has a genuine reason to suspect that the voter is ineligible. The absence of documentation does not itself constitute such a reason.

(Luft Dkt. 399:2.) With the common law name change (CLNC) process currently in place, there *is* a process to allow for discrepancies in "mismatches between current name and name in voter's SSA record." Another affidavit is not necessary and would be confusing for this purpose.

15. As for an individual's date of birth (DOB), it is not something that changes, like names can. But DMV recognizes that there can be clerical errors concerning a DOB, though it is rare. When this has occurred, the petitioner typically agrees to the DOB on file with the Social Security Administration (SSA) and we issue the card. There may be an isolated case when the petitioner refused to accept the DOB that SSA had on file and did not want to "change" their birthdate. In a situation as rare as this—where the petitioner will not

agree with SSA—DMV is open to discussing a potential allowance for these DOB clerical errors/discrepancies. For example, if a petition is on file with SSA with one birthdate, but other available documentation references a different birthdate, and the difference between both dates is less than 24 months and both DOBs indicate the applicant is 65 or older, DMV is open to accepting either of the birthdates, assuming all other identifiers match. But if the Court were to require this type of procedure, restrictions would have to be put in place to reduce the risk that the applicant could encounter issues receiving SSA benefits, like an age restriction. SSA often accepts state IDs and driver's licenses as proof of identity. If an IDPP applicant could sign an affidavit as Plaintiffs propose, get a state ID, and then take the ID to SSA to change their DOB to an age where they are eligible to draw benefits, a potential would exist for Social Security fraud. So these types of issues and contingencies would have to be worked out before this type of process could be implemented. And the petitioner would, of course, have to agree to which DOB they would want on their state ID.

16. The *Luft* plaintiffs have requested that DMV:

> Inquire whether a voter knows of any potential name discrepancy issues at the time the IDPP application is submitted, and to permit voters to use a common law name change affidavit at that time.

(Luft Dkt. 399:2.) This request is unnecessary. The MV3012 form already asks whether one's current name is different than that on their birth record (see

below).

A. To facilitate the document search process for <u>United States-born citizens</u>, please provide the following:
*Please be advised that complete birth record information improves the search process with Vital Records.*

| Birth Name – First | | Middle | Last *(as it appears on the birth certificate)* |
|---|---|---|---|
| Sex<br>☐ Male ☐ Female | Birth Date (mm/dd/yyyy) | Place of Birth *(State/Jurisdiction/Territory)* | |
| Place of Birth – County or Equivalent *(Parish – LA, Borough – AK)* | | Place of Birth *(City, Village or Township)* | |
| Mother's Name – First | Mother's Middle | Mother's Last — Maiden Name *(as it appears on the birth certificate)* | |
| Father's Name – First | Father's Middle | Father's Last *(as it appears on the birth certificate)* | |
| Is your current name different than that on your birth record<br>☐ Yes ☐ No    If Yes, What is Your Current Legal Name: | | | |

The IDPP is a process specifically designed for persons that are unable to provide proof of name and date of birth or U.S. citizenship. Until documentation is located or verified by DMV, the CLNC is not relevant. Another goal of the IDPP is to make the process as simple as possible. Including new questions and requiring additional handouts could make the process more confusing or daunting for some applicants. Instead, DMV tries to focus on exactly what is needed to move forward while still ensuring that the applicant has a receipt for voting in hand.

    17.    The *Luft* plaintiffs have requested that DMV:

> Establish a process that provides notice and a hearing before a neutral decision maker to voters denied Temporary Receipts or Hard Cards by the DMV due to (1) claims of ineligibility, fraud, or any other reason or (2) the DMV's failure to resolve their IDPP petition within 180 days.

(Luft Dkt. 399:2–3.) This request is unnecessary since denials are already subject to judicial review under Wis. Stat. § 343.165(8)(e). In addition, this request does not make sense when applied to the large majority of applicants

who no longer receive IDPP receipts because their applications were voluntarily cancelled. As I explained in one of my prior declarations, before an application is denied, it is circulated to a committee for denial review. (*See* One WI Dkt. 351:¶ 14.) I have already asked that CAFU handle any cancellations that are not customer-initiated the same as we handle these denials; this process is already in action, and three applications proposed for cancellation were circulated amongst the committee for review. Two of the applications were cancelled because documentation was found which rendered the applicant not eligible for the IDPP (not a U.S. citizen). The third application was referred back to CAFU for additional adjudication with the state of California.

18. If necessary, DMV would comply with any order establishing a management check-in process for applications that remain in a pending status (not suspended) for 180 days or more.

19. The *Luft* plaintiffs have also requested that DMV:

> Include the following language: "Need an ID for voting? Through the DMV's ID petition process, you can get a free ID even if you don't have documents like a birth certificate" on (i) any future mailing or publication that mentions the voter ID requirement, (ii) all relevant websites that mention the voter ID requirement, and (iii) all DMV and/or WEC hotlines.

(Luft Dkt. 399:3.) This request is unnecessary. This language, or a close variation of it, is already included on all relevant sources and

communications. For example: https://wisconsindot.gov/Pages/dmv/license-drvs/how-to-apply/id-card.aspx ("An ID Petition Process is available if fees arise in order to obtain a free ID card for voting. This petition process is available for applicants unable to provide proof of name and date of birth, United States citizenship, identity, or other required documentation"); https://wisconsindot.gov/Pages/dmv/license-drvs/how-to-apply/petition-process.aspx ("Getting a free ID for Voting is easy **even if you do not have the documentation to get a regular Wisconsin ID!**"); and https://wisconsindot.gov/Pages/home.aspx (containing a link to the palm card). If the Court orders this language to appear anywhere else in DMV's publications, media, or websites, DMV will comply.

20. The *Luft* plaintiffs have requested that DMV:

> Amend the Form MV3012, the Temporary Receipt, the Takeaway Document, and the Palm Card related to IDPP to conspicuously explain: (i) that a voter must remain in contact with DMV for a specified time to continue receiving Temporary Receipts, (ii) that if the voter loses contact and the petition is cancelled or denied the voter may reinstate the petition and receive a Temporary Receipt by contacting DMV and (iii) that the voter has rights to a hearing, as noted above.

(Luft Dkt. 399:3.) DMV would oppose any right to a hearing, beyond what is already contemplated under state law, for the reasons noted above. It does not make sense to add this proposed language to the MV3012 form since this form is submitted to DMV and not a reference source for the applicant. The language contained on the takeaway document and palm card has already been

approved by this Court. If the Court ordered that the language should be changed on these documents, and that similar language should be added to the temporary receipts, DMV would comply.

21. The *Luft* plaintiffs have requested that DMV:

> Offer the Palm Card—in digital and printed format and in Spanish and English—to all organizations identified in the October 21, 2016 Joint Status Report, to organizations identified in footnote 21 of the Luft Plaintiffs' Brief in Support of the Motion for Preliminary Injunction, to state public assistance agencies, and to state agencies serving low income and homeless persons.

(Luft Dkt. 399:3.) DMV can comply with a Court order to provide any organizations on an established electronic mailing list a link to the palm card in both English and Spanish.

22. The *Luft* plaintiffs have requested that DMV:

> Personally contact and offer to meet, train, and discuss outreach and IDPP with all organizations identified in the preceding paragraph, as well as organizations identified in the Joint Status Report of October 21, 2016, no later than the week of October 12, 2020..

(Luft Dkt. 399:4.) DMV does not have the resources to accomplish this in the weeks prior to the election. DMV can comply with a Court order to provide any organizations on an established electronic mailing list additional links to information about IDPP and include DMV contact information for any questions.

23. The *Luft* plaintiffs have requested that DMV:

Ensure that both Spanish and English versions of the Palm Card are

> conspicuously posted in all DMV offices and on any DMV web page related to ID and IDPP, and that a copy of the Palm Card is given to any voter seeking an ID card at a DMV office.

(Luft Dkt. 399:4.) This request is unnecessary. The palm card is already conspicuously posted in all DMV customer service centers, in both English and Spanish. DMV will confirm that this remains the case as to each of the field offices. Supervisors already submit a checklist of communications with all employees regarding the IDPP, so DMV is willing to include a checkbox for the Supervisor to confirm that the palm card in both languages is posted in every customer service center.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 21st day of September, 2020.

_____
KRISTINA BOARDMAN