IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
et al.,

       Plaintiffs,

       v.                        Case No. 15-CV-324

MARK L. THOMSEN, et al.,

       Defendants.

---

JUSTIN LUFT, et al.,

       Plaintiffs,

       v.                        Case No. 20-CV-768

TONY EVERS, et al.,

       Defendants.

---

**SUPPLEMENTAL DECLARATION OF MEGAN WOLFE
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON REMAND FROM THE SEVENTH CIRCUIT COURT
OF APPEALS**

---

I, Megan Wolfe, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Administrator of the Wisconsin Elections Commission (WELEC). I make this declaration in response to the *Luft* Plaintiffs' Motion for a Preliminary Injunction and the *One Wisconsin* Plaintiffs' Motion for Preliminary Injunction.

2.   I fully incorporate my prior declarations submitted in these cases and, namely, my declaration dated September 10, 2020 (One WI Dkt. 402; Luft Dkt. 404).

3.   The *One Wisconsin* plaintiffs have requested that the Court order the following:

> Any voter who presents an expired Temporary Receipt issued after April 20, 2020 in order to vote must be allowed to use the expired ID as their eligible voter ID. Defendants must take appropriate steps to make every election official aware of this policy.

(One WI Dkt. 403:75.) A change of this nature so close to the election runs the risk of confusing both voters and local election officials, which can lead to mistakes at the polls and inconsistent application of the rules. Communicating changes to 1850 municipal clerks, who in turn train election inspectors that work at the polling locations and would be responsible for implementing this change so close to an election is a challenge.  However, if the Court ordered this relief, WELEC would do its best to incorporate this change into its training provided to local election officials.

4.   The *One Wisconsin* plaintiffs have requested a Court order that:

> Defendants must create an affidavit for voters who either (1) have received but have lost or (2) have applied for but not yet received a Temporary Receipt. This affidavit must be made available on Election Day to voters who claim to meet one of these criteria, and they must be allowed to cast a provisional ballot. A provisional ballot cast under this provision will be counted unless the DMV reports that the affiant is not in the IDPP and has not been issued a Temporary Receipt.

(One WI Dkt. 403:76.) Voters who cannot provide an acceptable photo ID at the polls already receive a provisional ballot. However, this request seems to indicate a presumption that the provisional ballot would be counted unless the DMV provides evidence that the voter has not started the IDPP process. The mechanics of this request could be very difficult to administer because provisional ballots are issued by each of the 1850 municipalities. It would take an unprecedented coordinated effort by all 1850 municipalities to report to DMV who has completed a provisional ballot application under this created affidavit, for DMV to respond to this information, and for local officials to then apply the response to either count or not count the provisional ballot by the statutory deadline. This puts local election officials and DMV in the position of trying to prove a negative, which I believe could lead to errors and confusion in the provisional ballot process, with little practical benefit to voters. DMV will issue a Temporary Receipt for anyone entering the IDPP within 24 hours by overnight mail near an election. So like any other voter who has lost, forgotten, or misplaced their qualifying photo ID, these voters with a Temporary Receipt through the IDPP may vote with a provisional ballot, request and receive another Temporary Receipt through the DMV, and return to the municipal clerk's officewith that Temporary Receipt on or before 4:00 p.m. on the Friday following the election to have their provisional ballot counted.

5.     The *Luft* plaintiffs have requested that WELEC:

Send a targeted mailing no later than October 6, 2020, to all registered voters without a Wisconsin driver's license or ID informing them of the ID requirement and the IDPP system.

(Luft Dkt. 399:3.)

6.     This type of mailing is not practical before the November 3, 2020 election for multiple reasons.

7.     First, the November 3 election is now less than 42 days away. As a comparison, the mailer that WELEC sent out on September 1 took four months to create, usability test, edit, proof, print and distribute. As a state entity, WELEC is required to follow the State's procurement statutes, policies, and procedures. *See* Wis. Stat. §§ 16.70–16.78. There would not be sufficient time to test the matching criteria proposed, design the mailer, usability test it to ensure it accomplishes the stated goals, print and send out this type of mailing prior to the November 3 election.

8.     Second, this type of mass mailing is very expensive and WELEC is currently operating under a large deficit. All state agencies have been directed to lapse funds in from the current budget, by the Department of Administration. WELEC has been asked to lapse nearly $600,000 which represents nearly 10% of our budget for the current biennium. This leaves the agency struggling to pay for budgeted costs and does not leave any remaining funds for unbudgeted initiatives.

9.     Third, determining who to send this type of mailer to would require matching between data sets, which is very difficult to identify if a match is really the same person. WEC is required by law to engage in a similar matching of data and a mailing through its membership in the Electronic Registration Information Center (ERIC) .  To accomplish this, ERIC has a proprietary matching algorithm that can be used to make matches between the DMV and WEC databases to identify eligible, but unregistered voters.  This comparable process is complex, requiring years of groundwork and the implementation of many security and data exchange safeguards. A mailing of this type would likely require WEC and DMV to create a comparable system for data matching between two separate agency databases with incongruent data fields, and to develop a process to securely transfer and compare data files in less than 6 weeks.   Without time to create an accurate matching process, there could be many "false positives," meaning that individuals that do not match this group of "registered voters without a Wisconsin driver's license or ID" would receive this mailer. Additionally, even if possible, this mailing would reach people who already have qualifying IDs that are not in DMV records, such as  U.S. Passport, veterans ID card, or tribal ID card, which could create a false impression that such people need a Wisconsin-issued  ID. Overall, such mailing could certainly cause more harm than good when it comes to educating voters about photo ID.

10.     The *Luft* plaintiffs have also requested that WELEC:

Include the following language: "Need an ID for voting? Through the DMV's ID petition process, you can get a free ID even if you don't have documents like a birth certificate" on (i) any future mailing or publication that mentions the voter ID requirement, (ii) all relevant websites that mention the voter ID requirement, and (iii) all DMV and/or WEC hotlines.

(Luft Dkt. 399:3.) The scope of this request would be problematic, and could likely cause more voter confusion. While WELEC uses this language on almost all of its photo ID materials, there are some materials that are directed at other aspects of the photo ID requirement. The IDPP is only one component of the photo ID law, which itself is just one component of Wisconsin's electoral system. WELEC must be cognizant of the fact that over-emphasizing the IDPP would minimize other information that is material and relevant for a greater population of voters. Talking about IDPP in *all* of our messaging would undermine this balance and, I believe, confuse voters.

11.     The *Luft* plaintiffs have also requested that WELEC:

Ensure that IDPP information (such as the Palm Card) is posted at all municipal clerk's offices, on all municipal clerk's websites, and at all early voting sites and polling places, and is provided along with provisional ballot instructions to any voter who is offered a provisional ballot.

(Luft Dkt. 399:3.) This request is not within WELEC's statutory authority, nor would WELEC have any way to monitor compliance with over 1,850 municipalities and 3,000 polling places. Additionally, 1,200 of the municipalities are townships—our smallest jurisdictions—and many of these

do not have a town hall or municipal buildings. In these small jurisdictions, clerks may conduct in-person absentee voting out of their homes or by appointment at a public (but not fixed) place where they will meet the voter. It is not feasible to post IDPP information "at all early voting sites," given these circumstances. If the Court ordered this relief, WEC could prescribe an additional polling place sign for use by municipalities but would be unable to ensure or monitor compliance given the lack of statutory authority and the decentralized structure of election administration in Wisconsin.

12.     The *Luft* plaintiffs have also requested that WELEC:

> Personally contact and offer to meet, train, and discuss outreach and IDPP with all organizations identified in the preceding paragraph, as well as organizations identified in the Joint Status Report of October 21, 2016, no later than the week of October 12, 2020.

(Luft Dkt. 399:4.) WELEC has already largely satisfied this request. WELEC currently has a Zoom meeting scheduled for September 23, 2020, to train voter advocacy groups on the different types of media and resources it has available to help inform voters about the different ways they can cast their ballot, important election deadlines, and photo ID information, including how to get a free photo ID for voting purposes and the ID petition process with DMV. Invitees for this meeting include: League of Women Voters; Coalition of Voting Organizations; All Voting is Local; Disability Vote Coalition; Citizen Action; One Wisconsin; Second Harvest Food Bank; Porchlight; the Milwaukee

Elections Commission; and the City of Madison Clerk. WELEC has also published the invite for the training on our website so other groups who may not be on our distribution list can also attend. The materials are also published on our website at https://elections.wi.gov/clerks/voter-outreach.

13.     The *Luft* plaintiffs have requested that WELEC:

> Comply with all elements of the IDPP information plan WEC has already established for this fall, and ensure that IDPP information provided as any part of media availability or outreach is also offered to media serving minority communities.

(Luft Dkt. 399:4.)  WELEC already is complying with its statewide photo ID and IDPP outreach plan (*see* Luft Dkt. 403-20), so there is no need for a court order to comply with WELEC's own plan. I am not certain what media outlets would come within "media serving minority communities," and it is unclear whether this seeks anything beyond what WELEC is already committed to doing in its statewide photo ID and IDPP outreach plan.

14.     In addition to WELEC's statewide photo ID and IDPP outreach plan (*see* Luft Dkt. 403-20), WELEC has also done additional outreach activities for the upcoming election. On September 15, 2020, WELEC contacted the Wisconsin County Clerks, Wisconsin Municipal Clerks, City of Milwaukee Election Commission, and Milwaukee County Election Commission to provide them with a "Voter Outreach Plan for November Elections," which includes a toolkit these clerks and municipalities can use to reach out to voters in the

8

community. This contact was made publicly and is available at
https://elections.wi.gov/node/7113. Specific to photo ID, the toolkit includes
quick information guides and more individual ID-specific guides for clerks to
use around their community. It also includes the palm card. It also directs
these clerks and municipalities to additional photo ID information at
https://elections.wi.gov/elections-voting/photo-id                     and
https://bringit.wi.gov/multimedia.

15.    On September 17, 2020, WELEC contacted the Wisconsin County
Clerks, Wisconsin Municipal Clerks, City of Milwaukee Election Commission,
and Milwaukee County Election Commission to provide them information
titled "ID Petition Process Receipt Timeline Change." This contact was made
publicly and is available at https://elections.wi.gov/node/7119.  This notice also
provides that, "WEC has voter outreach resources that you can use to provide
information about this process or with voters who report difficulty in obtaining
the supporting documents, such as a birth certificate, needed to obtain an ID
card.  A palm card that explains the IDPP process to voters that can be used
at the polling place on election day is available here: https://bringit.wi.gov/free-
id-and-identification-card-petition-process. . . . Additional outreach materials
for the photo ID law are located here: https://bringit.wi.gov/multimedia."

16.    WELEC's website devotes a page to providing "Voter Outreach
Resources", found at https://elections.wi.gov/clerks/voter-outreach. On this

page, there is a specific section entitled "Photo ID and the ID Petition Process" where it includes links to the Photo ID Guide, the ID Petition Process Brochure (palm card in both English and Spanish), and Proof of Residency vs. Photo ID chart.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 21st day of September, 2020.

_____
MEAGAN WOLFE