IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC., *et al.*,

    Plaintiffs,

v.                                              Case No. 15-CV-324-JDP

ANN S. JACOBS, Chair, Wisconsin
Elections Commission, *et al.*,

    Defendants.

---

JUSTIN LUFT, *et al.*,

    Plaintiffs,

v.                                              Case No. 20-cv-768-JDP

TONY EVERS, *et al.*,

    Defendants.

---

**JOINT STATUS CONFERENCE REPORT**

---

In response to this Court's May 11, 2021 Order, and in preparation for the May 27 status conference, the parties respectfully submit this Joint Status Conference Report "outlining the steps that need to be taken to bring these cases to a resolution, along with a proposed schedule." ECF No. 431. The parties agree and disagree as follows:

    **I.**     **Plaintiffs' position and proposal**

Plaintiffs believe this Court should schedule a three-day trial for late October or early November 2021 to address the disputed factual issues identified in the Court's September 28, 2020

decision denying summary judgment (ECF No. 425) and in the Seventh Circuit's instructions for further proceedings on remand in *Luft v. Evers,* 963 F.3d 665, 679-80 (7th Cir. 2020). Plaintiffs also believe that further summary judgment practice would be unnecessary and inappropriate at this late date, particularly since the Court denied defendants' motion for summary judgment on these same issues last fall.

The *Luft* litigation has literally been pending for nearly a full decade (it was filed December 13, 2011). *One Wisconsin* has been pending for nearly six years (filed May 29, 2015). Both cases already have involved multiple rounds of summary judgment briefing, trials and other evidentiary proceedings, and appeals followed by remands. And this Court emphasized last September "that there are genuine issues of fact on the question whether qualified electors continue to face unreasonable burdens on their right to vote." ECF No. 425 at 5 (citing Fed. R. Civ. P. 56(a)). Plaintiffs are unaware of any changes to the ID Petition Process (IDPP) in recent months that might change the Court's determination that a trial on these "genuine issues" is necessary.

The Court should therefore put these cases on a trajectory for a final trial on the merits this fall. Plaintiffs believe that many of the trial issues can be sufficiently addressed through written submissions, but that some factual (and potentially expert) testimony will help clarify the disputed facts and place them in their appropriate context.

Plaintiffs' proposed schedule calls for factual discovery to begin June 1 and run through the end of August, to be followed by expert reports and depositions in September and early October, and the submission of a single round of trial briefs in late October. The parties should be prepared for a three-day trial on or after October 25, as the Court's calendar permits. The parties should submit one final, single round of briefs two weeks after the trial (with appropriate holiday adjustments).

Plaintiffs note in support of this proposal that there has been no comprehensive discovery in these cases since 2016. Given the Seventh Circuit's delay in deciding the *One Wisconsin* and *Luft* appeals and the timing of its remand in the midst of the 2020 elections, there was only time for approximately one month of expedited discovery late last summer, between the August 25 status conference and the September 25 hearing on the preliminary injunction and summary judgment motions. Deposition discovery was limited to three abbreviated depositions. Numerous discovery disputes remained unresolved as of last September's hearing, and plaintiffs made clear their need for additional factual discovery beyond the preliminary injunction stage.

The district courts in both *Luft* and *One Wisconsin* have previously considered and relied on expert testimony regarding Wisconsin's voter ID system in general and the operation of the IDPP in particular.[1] Given the extraordinarily expedited character of discovery last August and September following the *Luft* remand, there simply was no time to seek relevant expert analysis and testimony about the IDPP's operations and impacts. Plaintiffs' proposed schedule anticipates the *potential* use of expert testimony, consistent with the prior trials in *Luft* and *One Wisconsin*.

Plaintiffs propose as follows:

|  |  |
|---|---|
| Service of document requests and other written discovery | June 1, 2021 |
| Service of responses to document requests and other written discovery | June 30, 2021 |
| Fact depositions and continuing written fact discovery | July-August 2021 |

---

[1] *See, e.g., Frank v. Walker*, 17 F. Supp. 3d 837 (E.D. Wis.), *rev'd*, 768 F.3d 744 (7th Cir. 2014), *rehearing en banc denied by an equally divided court*, 773 F.3d 783 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1551 (2015); *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896 (W.D. Wis. 2016), *aff'd in part, rev'd in part, and remanded in part sub nom. Luft v. Evers*, 835 F.3d 649 (7th Cir. 2020).

3

| | |
|---|---|
| Parties complete document production, written discovery, and fact depositions | August 31, 2021 |
| Expert reports and disclosure of expert testimony | September 10, 2021 |
| Rebuttal experts | October 1, 2021 |
| Reply experts | October 8, 2021 |
| Close of expert discovery | October 15, 2021 |
| Filing of pre-trial briefs (one round) and identification of anticipated trial witnesses | October 22, 2021 |
| Pre-trial conference | October 25, 2021 or thereafter |
| Trial | Three-day trial in late October or early to mid-November 2021 |
| Filing of post-trial briefs (one round) | Two weeks following trial (subject to modifications for holidays) |

Although Plaintiffs strongly disagree with many of the claims and characterizations in the Defendants' following proposal, Plaintiffs will not burden the Court with a point-by-point rejoinder. The two key sentences in Defendants' response appear *infra* at 11: "Since last fall, [DMV] has expedited the extraordinary proof process, refined the process by which applications are cancelled for ineligibility, and implemented procedures for regular review of pending applications. These changes are well-documented and can be easily explained through voluntary supplemental disclosures." Defendants do not actually explain what DMV has done to fix the multiple problems uncovered last September. Nor do Defendants share any of the "well-documented" record of these new "expedited" procedures, "refine[ments]," and requirements for "regular review." To the contrary, Defendants ask to wait until June 28 to even begin turning over the "well-documented" files that supposedly establish the absence of any remaining issues for trial.

Although this is the first that Plaintiffs' counsel have heard of these alleged IDPP reforms, this is far from the first time that the State has tried to kick the can down the road—often on the

eve of trial or an important appellate argument—by claiming to have just recently implemented new and improved procedures that supposedly fix the IDPP's problems. The IDPP itself was created on the eve of the September 2014 Seventh Circuit argument in *Frank I* to cure the glaring absence of *any* regulatory "safety valve," and this Court will well remember the "emergency" procedures implemented just before, during, and after the May 2016 trial in *One Wisconsin* (which included the creation of the temporary-receipt system). The State made further adjustments to the IDPP in August 2016 to avoid *en banc* review in the Seventh Circuit in *Frank III*. The newly claimed—but as-of-yet-undisclosed—reforms sound like more of the same. But we cannot know until we see them.

Most importantly, the question of whether or not the State has in fact solved the IDPP's many problems is a material fact at the heart of the litigation and can only be resolved through trial. Fed. R. Civ. P. 56(a) (Summary judgement is only appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law); *see also Luft*, 963 F.3d at 679 (finding that the question left for the district court is "whether the state ensures that every eligible voter can get a qualifying photo ID with reasonable effort"). Plaintiffs, therefore, request that Defendants produce documents in accordance with the schedule proposed above and that a trial date be set for final resolution of the claims.

## II. Defendants' position and proposal

After 10 years of litigation, only one issue remains: Whether the I.D. Petition Process (IDPP) imposes an unconstitutional burden on voting for the small number of qualified electors who use the process to receive a voter-compliant ID, but who may not be able to readily obtain a

permanent hard-card ID.[2] This is a narrow issue that can be handled with supplemental discovery, stipulations of fact, and cross-motions for summary judgment.

There is no genuine dispute about the basic process for individuals using the IDPP. Every individual who seeks a voting-compliant ID through the IDPP will receive one, simply by submitting an application with whatever documents they have. The remaining issue, regarding whether the process is an unreasonable burden, is unlikely to involve genuine disputes of material fact. It is time to conclude these cases and the decade-long litigation of Wisconsin's voter ID law through a focused and efficient disposition proposed by the Defendants below.

This next and final phase of this litigation should begin with a clear definition of the issue to be addressed on this limited remand. With the issue properly defined, Defendants believe that only limited supplemental discovery will be needed to resolve this case, after which the parties should be able to stipulate to all material facts. Only if the parties are unable to reach stipulations on material facts should further discovery be allowed, and even then, discovery should be narrowly targeted to only those factual issues on which the parties were unable to reach stipulations. In either event, no trial will be necessary, and the case should be resolved on cross-motions for summary judgment.

---

[2] The *One Wisconsin* plaintiffs have conceded this narrow issue in briefing their 2020 motion for preliminary injunctive relief: "the issue is what we do about those who are 'stuck,' and being asked to engage in much more than mere 'reasonable effort' to secure an ID." (Dkt. 420:9.)

**A. Background: The only remaining question is whether the IDPP—whose operations are materially undisputed—imposes an unreasonable burden on the right to vote.**

The full background of this case spans seven district court decisions,[3] nine Seventh Circuit decisions,[4] and two U.S. Supreme Court proceedings.[5] The most relevant decisions are generally referred to as *Frank I, Frank II, Frank III*, and *Luft*. In *Frank I,* the Seventh Circuit rejected the argument that anyone without an ID is "disenfranchised," where all a person must do is "scrounge up" their birth certificate and stand in line at DMV. *Frank v. Walker*, 766 F.3d 755, 756 (7th Cir. 2014). It reiterated that "the inconvenience of making a trip to the [department of motor vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.* (citation omitted.) The court also held that the paperwork component of the ID issuance process is not an infringement on the right to vote, and that "unless Wisconsin makes it needlessly hard to get photo ID, it has not denied anything to any voter." *Id.* at 753.

In *Frank II*, the court acknowledged the possibility of future as-applied challenges, and established the standard for any such inquiry: whether voters are "unable to get acceptable photo ID with reasonable effort." *Frank v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016). It denied an *en*

---

[3] *Frank v. Walker*, 17 F. Supp. 3d 837 (E.D. Wis. 2014); *Frank v. Walker*, 141 F. Supp. 3d 932 (E.D. Wis. 2015); *One Wisconsin Inst., Inc. v. Thomsen*, No. 15-CV-324-JDP (W.D. Wis. Aug. 11, 2016); *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896 (W.D. Wis. 2016); *Frank v. Walker*, No. 11-C-1128 (E.D. Wis. July 29, 2016); *One Wisconsin Inst., Inc. v. Thomsen*, 351 F. Supp. 3d 1160, (W.D. Wis. 2019); *One Wisconsin Inst., Inc. v. Thomsen*, 490 F. Supp. 3d 1338 (W.D. Wis. 2020).

[4] *Frank v. Walker*, 766 F.3d 755 7th Cir. 2014); *Frank v. Walker*, 769 F.3d 494 (7th Cir. 2014); *Frank v. Walker*, 773 F.3d 783 (7th Cir. 2014); *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014); *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016); *Frank v. Walker*, 196 F. Supp. 3d 893 (7th Cir. 2020); *Frank v. Walker*, No. 16-3003, 2016 WL 4224616 (7th Cir. Aug. 10, 2016); *Frank v. Walker*, 835 F.3d 649 (7th Cir. 2016); *Luft v. Evers,* 963 F.3d 665 (7th Cir. 2020).

[5] *Frank v. Walker*, 574 U.S. 929 (2014); *Frank v. Walker*, 575 U.S. 913 (2015).

*banc* hearing in *Frank III* because "'initiation' of the IDPP means only that the voter must show up at a DMV with as much as he or she has, and that the State will not refuse to recognize the 'initiation' of the process because a birth certificate, proof of citizenship, Social Security card, or other particular document is missing." *Frank v. Walker*, 835 F.3d 649, 651 (7th Cir. 2016).

Last year the Seventh Circuit's *Luft* decision vacated this Court's decision that the IDPP was unconstitutional. *Luft v. Evers*, 963 F.3d 665, 679 (7th Cir. 2020). It reiterated that "the state's process, as the state describes it, is adequate" if reliably implemented. The court went on to frame the dispositive issue for remand in these consolidated cases. It understood the IDPP to be a process through which "[p]eople who lack the documents required to receive a photo ID may petition the state for assistance and a temporary receipt." *Id.* at 669. It explained that the process issues a credential as a matter of course to those who initiate the process, and that "[a]dministrative steps such as gathering documents, making a trip, and posing for a photograph, are no more than what *Crawford* . . . considered reasonable." *Id. at* 679–80. The court also acknowledged that "[t]hose who find it difficult to assemble the required documentation face 'somewhat heavier' burdens." *Id.* So the question on remand is whether this process is implemented reliably to provide a qualifying ID to anyone who more likely than not meets the requirements. *Id.* at 679. However, the court included an important limitation on any remand remedies: any additional adjustments to the IDPP "must not order any relief that excuses applicants from the failure to comply with reasonable requests for information that is material to voting eligibility." *Id.* at 680.

After remand, and in the lead-up to the November 2020 general election, Defendants provided Plaintiffs with over 130,000 documents as updated discovery about the functioning of the IDPP. Based on that discovery, Plaintiffs filed motions for preliminary injunctive relief, and Defendants filed a motion for summary judgment on this remaining issue—whether every eligible

voter can get a voting-compliant ID with reasonable effort. *Id. at* 679. In its decision on those motions, this Court identified "petitioners who continue to get 'stuck' in the [IDPP] for months or even years through no fault of their own," and these petitioners' "difficulties in obtaining a long-term ID." *One Wisconsin Inst., Inc. v. Thomsen*, 490 F. Supp. 3d 1338, 1342 (W.D. Wis. 2020). It questioned whether "temporary receipts satisfy the state's constitutional duties," and ultimately found that this created "genuine issues of fact on the question whether qualified electors continue to face unreasonable burdens on their right to vote," denying Defendants' motion for summary judgment. *Id.*

As for Plaintiffs' request for preliminary injunctive relief, this Court focused on "(1) removing unreasonable barriers to voting in the general election for those petitioners with pending or new applications in the IDPP; and (2) providing public education about the IDPP to those who need it most." *Id.* at 1342. It found that Plaintiffs' requested relief relating to temporary IDPP receipts was not "narrowly tailored to alleviate unreasonable burdens on the right to vote." *Id.* at 1342–43. This included requests for "individualized outreach to petitioners, allowing the use of expired receipts, and allowing voters without a receipt to use an affidavit instead." *Id.* at 1342–43. This Court ordered "a modest change to defendants' current policies" by slightly expanding the time period for overnight mail of IDPP receipts that were newly issued or set to expire within two weeks of the November 3, 2020 election. *Id.* at 1342. This, the court held, would "help minimize the risk that eligible voters will be left without a valid credential on election day." *Id.*

Plaintiffs also sought injunctive relief concerning public education efforts, including mailings to all Wisconsin residents who are eligible to vote but don't have an ID, expanded outreach, and changes to any publication, website, or mailing that mentions the voter ID requirement. *Id.* at 1343. This Court largely rejected Plaintiffs' request, finding that "the IDPP has

9

now been in place for several years, so the need for intensive public education is diminished." *Id.* Instead, it ordered that Defendants send its digital "voter outreach toolkit" to a list of 10 homeless service organizations; that the Commission include KW2's list of minority media organizations in its press distribution list; and that municipal clerks post copies of the palm card at polling places and hand out copies of the palm card to anyone who has cast a provisional ballot. (Dkt. 429:2.) This limited relief, the court noted, would "ensur[e] that eligible voters know what the rules are and can exercise their established rights." *One Wisconsin*, 490 F. Supp. 3d at 1344.

**B. Future proceedings and discovery should be limited to the narrow issue on remand.**

Given the parameters for remand outlined in *Luft*, along with this Court's most recent decision on preliminary injunctive relief and summary judgment, Defendants submit that there is no longer a viable claim concerning public outreach and education (even assuming that such relief was ever appropriate and necessary),[6] and the only remaining issue in this case is clear: Does the IDPP unreasonably burden the right to vote of the small number of qualified electors who use the IDPP to obtain an ID for voting?[7]

Getting to this final issue on remand has consumed enormous resources including document requests requiring the Defendant to produce millions of pages of documents, depositions, trials, and appeals. This Court and the Seventh Circuit have answered essentially all of the legal questions, with only this narrow issue on remand remaining. Future proceedings should be tailored to efficiently resolve the remaining issue. Defendants propose that if there is any

---

[6] Defendants continue to dispute whether public outreach and education requirements are constitutionally required.

[7] On remand, the *One Wisconsin* plaintiffs sought statistics on the racial composition of IDPP petitioners, which could not be queried by DMV. The court in *Luft* rejected all of Plaintiffs' racial-discrimination claims, *see* 963 F.3d at 671–73, so any such inquiry is immaterial to the remaining issue in this case. Moreover, to the extent this Court concludes otherwise, it is very likely that the parties could stipulate to any relevant facts.

disagreement with the remaining issue as framed by Defendants, then the scope of future proceedings be resolved, by the Court if necessary, prior to additional discovery. This need is particularly acute given Plaintiffs' proposal for expert witnesses.

**C. Only supplemental discovery is needed to resolve the remaining issue in these consolidated cases.**

In mid-August, 2020, in preparation for the last round of litigation after remand, Defendants produced over 133,000 documents to Plaintiffs in discovery totaling nearly 300,000 pages (*See* Dkt. 422:35.) Along with a complete CAR (Case Activity Report) for every IDPP applicant, these documents included DMV's policies and procedures, IDPP training materials, IDPP reports, overnight mailing information, quality assurance measures, IDPP implantation plans, meeting agenda and minutes, and public outreach efforts for each state-wide election starting with the 2017 spring general election. The plaintiffs took depositions of DMV Administrator Kristina Boardman, WEC Administrator Meagan Wolfe, and CAFU Supervisor Susan Schilz in September 2020. Plaintiffs have now had ample time to review these documents.

DMV continuously looks for opportunities to improve the IDPP. Since last fall, it has expedited the extraordinary proof process, refined the process by which applications are cancelled for ineligibility, and implemented procedures for regular review of pending applications. These changes are well-documented and can be easily explained through voluntary supplemental disclosures.

To that end, Defendants propose providing a supplemental production of DOT documents within thirty days of the scheduling conference. This production would align with the categories of documents produced in Fall 2020, with all relevant updates.

Following that production, Plaintiffs would have 30 days to review the documents, followed by a meet-and-confer in which the Plaintiffs explain what additional discovery, if any, is

11

necessary for the Court to decide the remaining issue. The parties will endeavor to agree on the scope and timing of any additional discovery, resorting to this Court only if they are unable to reach agreement. Any additional discovery would be limited to any discrete factual issues identified following the initial supplemental document production, and would be completed within 90 days of the parties meeting.

If no additional discovery is needed, or after the 90-day discovery period closes, the parties would then have eight weeks to reach stipulations on any facts necessary to resolve this case. The Defendants are confident that the parties and attorneys, with now a decade of experience in this case, can stipulate to any facts necessary to bring this case to a final resolution.

### D. The remaining issue in this case can be resolved through cross-motions for summary judgment.

Given what should be a very narrow issue to resolve in these consolidated cases—whether the IDPP imposes an unreasonable burden on the right to vote of the small number of qualified electors who have difficulty obtaining a long-term State ID card or other voting credential—this case can be readily resolved by cross-motions for summary judgment. And even if the issue were framed otherwise, Defendants do not believe that there will be any disputed material facts in this case. Defendants therefore believe that the parties should be able to stipulate to any facts necessary to resolve this case.

There is no need to go through the time and expense of another court trial, which is only needed to determine disputed material facts. Scheduling a court trial at this point would be premature, as Defendants are willing to work with Plaintiffs in coming to stipulations of material facts. Further, a court trial will inevitably also include pre-trial disclosures and briefing, along with post-trial briefing or submissions. Given this, it will be more efficient to simply proceed with summary judgment briefing to resolve the remaining issue in these cases.

E. **Defendants' proposed schedule for resolution of these consolidated cases.**

Defendants propose the following timeline for resolution of this case:

- <u>By June 28, 2021</u>: Defendants produce supplemental discovery responses from DOT (as described above);

- <u>June 28–July 28, 2021</u>: Plaintiffs review supplemental production.

- <u>By July 30, 2021</u>: the parties meet and confer to address whether any additional discovery is needed.

    o If no additional discovery is needed, <u>August 2–October 1, 2021</u>: the parties engage in a good faith effort to stipulate to all material facts in this case that are necessary for resolution by cross-motions for summary judgment;

    - Cross-motions for summary judgment: <u>November 1, 2021</u>.
    - Responses: <u>November 22, 2021</u>.
    - Replies: <u>December 6, 2021</u>.

    o If additional discovery is needed, <u>August 2–November 2, 2021</u>: the parties engage in limited discovery (as described above).

    - Following completion of discovery: <u>November 3–January 3, 2022:</u> the parties engage in a good faith effort to stipulate to all material facts in this case that are necessary for resolution by cross-motions for summary judgment.
    - Cross-motions for summary judgment: <u>February 1, 2022</u>.
    - Responses: <u>February 22, 2022</u>.
    - Replies: <u>March 8, 2022</u>.

Dated this 20th day of May, 2021.

                Respectfully submitted,

/s/ *Charles G. Curtis, Jr.*
Charles G. Curtis, Jr.
Perkins Coie LLP
33 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-5411
Facsimile: (608) 663-7499
CCurtis@perkinscoie.com

Bobbie J. Wilson
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94111-4131
Telephone: (415) 344-7000
Facsimile: (415) 344-7050
BWilson@perkinscoie.com

Marc E. Elias
Bruce V. Spiva
Elisabeth C. Frost
Amanda R. Callais
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
BSpiva@perkinscoie.com
EFrost@perkinscoie.com
ACallais@perkinscoie.com

*Attorneys for One Wisconsin Plaintiffs*

/s/ *Karyn L. Rotker*
Karyn L. Rotker
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Phone: (414)-272-4032 x12
Fax: (414)-272-0182
krotker@aclu-wi.org

Neil A. Steiner
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212)-698-3500
Fax: (212)-698-3599
neil.steiner@dechert.com

Angela M. Liu
Dechert LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Phone: (312)-646-5800
Fax: (312)-646-5858
angela.liu@dechert.com

Dale E. Ho
T. Alora Thomas
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212)-549-2648
dho@aclu.org
athomas@alcu.org

Ceridwen B. Cherry
American Civil Liberties Union Foundation
915 15th Street N.W., 6th Floor
Washington, D.C. 20005
Phone: (202)-675-2326
Fax: (202)-546-0738
ccherry@aclu.org

Anna Q. Do
Dechert LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Phone: (213)-808-5760
Fax: (213)-808-5760
anna.do@dechert.com

14

Selby Brown
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: (215)-994-4000
Fax: (215)-994-2222
selby.brown@dechert.com

Tristia Bauman
National Law Center for Homelessness & Poverty
2000 M Street NW, Suite 210
Washington, D.C. 20036
Phone : (202)-638-2535

Tharuni A. Jayaraman
Dechert LLP
1900 K Street NW
Washington, D.C. 20006
Phone: (202)-261-3330
Fax: (202)-261-3333
tharuni.jayaraman@dechert.com

*Attorneys for Luft Plaintiffs*

ERIC J. WILSON
Deputy Attorney General of Wisconsin

Electronically signed by:

*/s/ S. Michael Murphy*
S. MICHAEL MURPHY
Assistant Attorney General
State Bar #1078149

GABE JOHNSON-KARP
Assistant Attorney General
State Bar #1084731

JODY J. SCHMELZER
Assistant Attorney General
State Bar #1027796

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-5457 (Murphy)
(608) 267-8904 (Johnson-Karp)
(608) 266-3094 (Schmelzer)
(608) 267-2223 (Fax)

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of May, 2021, I filed the foregoing document using the Court's CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Charles G. Curtis, Jr.*
Charles G. Curtis, Jr.
